CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 0 5 2007

JOHN F. CORCORAN, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DONELL J. BLOUNT, SR., ) | |
|    Plaintiff, ) | Civil Action No. 7:07-cv-00480 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| JOHN M. JABE, et al., ) | By: Hon. Glen E. Conrad |
|    Defendants. ) | United States District Judge |

Proceeding pro se, plaintiff Donell J. Blount, Jr., brings this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff, an inmate at Red Onion State Prison ("ROSP") in Pound, Virginia, alleges that defendants employed at ROSP and with the Virginia Department of Corrections ("VDOC") have violated his constitutional rights to access the courts and to partake of a diet in accordance with the dictates of his religion. Plaintiff seeks monetary damages and injunctive relief. For the reasons that follow, the court will dismiss plaintiff's access to the courts claim, without prejudice, for failure to properly exhaust all available administrative remedies, pursuant to 42 U.S.C. § 1997e(a); plaintiff's religious diet claims will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.[1]

### I. Access to the Courts – Exhaustion of Administrative Remedies

Plaintiff contends that he has been denied meaningful access to the courts. He alleges that ROSP's policy of providing indigent inmates such as himself only $4.10 per week in postage "loans" for legal mail rendered him unable to file a petition for an en banc hearing in another case on appeal,

---

[1] Section 1915A(b)(1) provides that the court shall dismiss a complaint or any portion thereof as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

which "caused the Court to issue a mandate against [him]. . . ."[2]

Plaintiff has submitted a statement verifying that he has exhausted all available administrative remedies and that he has submitted copies of the record of such administrative proceedings. Additionally, he has numbered the exhibits and cited to them in his complaint.

On September 2, 2007, plaintiff filed an "Inmate Request for Information/Service," complaining that, on August 28, 2007, he was unable to send an envelope of legal mail, due to be filed with the United States Court of Appeals for the Fourth Circuit by August 29, 2007, because he did not have $.91, the amount of postage in excess of the funds remaining in his weekly postage allotment. Apparently, he had $3.69 remaining out of the $4.10 allowed per week for indigent inmates to send legal mail. He asked that the envelope, which "contain[ed] 20 copies of a motion for rehearing en banc," "be mailed out as the law mandates, at state expense." On September 4, 2007, plaintiff received the following staff response: "The allotment for legal mail is $4.10. You have this letter to Clerks [sic] Office that will cost $4.60. You need to apply .50 cents [sic] for postage."

On September 4, 2007, plaintiff filed an "Informal Complaint Form," setting forth these facts and adding that, on the same date, the envelope had been returned by the mailroom, which had "refus[ed] to mail it to the Court." He again asked to have the envelope forwarded to the Court, stating: "As an indigent prisoner i'm [sic] entitled to have my mail sent to the court at the state's expense." The informal complaint was returned to plaintiff with the following staff response: "Your

---

[2] While indigent inmates may not be denied a reasonable amount of postage to send legal mail, they do not have unlimited right to free postage in connection with right of access to court. White v. White, 886 F.2d 721, 723 (4th Cir. 1989). To state a claim based on delay or non-delivery of legal mail, an inmate must allege that he suffered actual adverse consequences as a result of the delay or that the non-delivery deprived him of meaningful access to the courts. Id. at 724.

2

legal mail loan per week is $4.10[.] Contact your counselor maybe they can do something. There is nothing mailroom can do. Our policy is clear[.] Only $4.10 per week for a legal loan."

On September 9, 2007, plaintiff filed a "Regular Grievance Form," recounting these facts and stating that he wanted the following action taken" "I want my legal mail sent to the Court as the United States Supreme Court has mandated." On September 11, 2007, the grievance was returned to plaintiff because he had failed to provide required documentation; plaintiff was directed to resubmit his grievance with proper documentation "by September 14th." Plaintiff timely challenged the adverse intake decision, which was upheld by the Regional Ombudsman on September 17, 2007; however, he did not timely resubmit his grievance as directed.

The Prison Litigation Reform Act (PLRA) provides, in part, that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A district court may sua sponte dismiss a complaint where a prisoner's failure to exhaust is apparent from the face of the complaint. Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 683 (4th Cir. 2005). The exhaustion requirement "applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedy procedures for purposes of § 1997e(a) means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. See, e.g., Woodford v. Ngo, 548 U.S. ___, slip op. at 6-8 (2006). Section 1997e(a) applies whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion provision is mandatory, even in those instances where an inmate claims that exhaustion would be futile or the

3

remedy inadequate. Id. at 741, n.6.

Having reviewed plaintiff's submissions, the court concludes that he has not properly exhausted his administrative remedies with respect to this claim. Although plaintiff attempted to file one regular grievance regarding the mailing of the required copies of his motion for a rehearing en banc,[3] the grievance was rejected during the intake process and returned to him without being logged.[4] Although plaintiff sought a review of the adverse intake determination, that determination was upheld. Most significantly, it is clear that plaintiff could have followed the proper procedure by timely resubmitting his grievance with the requested documentation, and that he was specifically invited to do so in the text of the adverse intake determination. Plaintiff's failure to seek further review in accordance with DOP 866 by submitting a properly documented grievance compels a finding that he did not properly exhaust his administrative remedies. See Woodford v. Ngo, slip op.

---

[3] Plaintiff states that he attempted to mail the entire package on August 28, 2007, and that it was due for filing by August 29, 2007. As the court has already noted, while indigent inmates may not be denied a reasonable amount of postage to send legal mail, they do not have unlimited right to free postage in connection with right of access to court, and to state a claim based on delay or non-delivery of legal mail, an inmate must allege that he suffered actual adverse consequences as a result of the delay or that the non-delivery deprived him of meaningful access to the courts. White, 886 F.2d at 723-24. Plaintiff does not account for his own failure to anticipate that the policy, which he states he has known about since February 2007, might require him to break the package up into two separate mailings in order to timely file. Nor does he account for his own decision not to file the motion until the eleventh hour.

[4] Under Division Operating Procedure ("DOP") 866, an aggrieved inmate must follow three distinct steps to exhaust the procedure's remedies. See generally Couch v. Jabe, 479 F. Supp.2d 569, 577-78 (W.D. Va. 2006). First, he must make a good faith effort to resolve the issue informally, by pursuing an informal complaint. DOP 866-7.13. If the inmate is not satisfied with the response to the informal complaint, he may file a regular grievance within 30 days from the occurrence or incident or from the discovery of the occurrence or incident, whichever date is later. DOP 866-7.14. The inmate must attach the informal complaint to his regular grievance form or explain in the regular grievance text his informal attempts to resolve the problem. Id. at (1). If the regular grievance meets intake requirements, the grievance coordinator will log it for processing and send the inmate a receipt. Id. at (2). If the grievance does not meet intake criteria for acceptance, the grievance coordinator will note the deficiencies on the back of the form and return it to the inmate. Id. An inmate may seek review of the intake decision within five (5) calendar days by sending the grievance to the Regional Ombudsman for a determination. Id. DOP 866 provides for three levels of review for regular grievances, although most complaints qualify for only two levels of review. DOP 866-7.15.

at 8 (emphasizing that "proper exhaustion . . . demands compliance with an agency's deadlines and other critical procedural rules").

Accordingly, the court will dismiss plaintiff's access to the courts claim, without prejudice, for failure to exhaust all available administrative remedies as required under 42 U.S.C. § 1997e(a).

## II. Religious Diet – Failure to State a Claim

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). And, as the court has noted, 28 U.S.C. § 1915A(b)(1) provides that the court shall dismiss a complaint or any portion thereof "in a civil action in which a prisoner seeks redress" from a state actor "as soon as practicable" upon a determination that the complaint or any portion thereof "is frivolous, malicious, or fails to state a claim upon which relief may be granted." A complaint fails to state a claim upon which relief can be granted when no relief is available under any set of facts that could be proved consistent with the allegations of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); see also Bell Atlantic Corp. v. Twombly, 550 U.S. ___, slip op. at 8 (2007) (while the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"; the Court specifically explained, id., slip op. at 18-24, that the Twombly analysis does not run counter to Swierkiewicz or impose a heightened pleading standard); Teachers' Retirement System of La. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007) (citing Swierkiewicz, 534 U.S. at 514, and stating that "a court may dismiss a complaint [for failure to state a claim upon which relief may be granted] only if it is clear that no relief could be granted under any

5

set of facts that could be proved consistent with the allegations").

Plaintiff contends that defendants have violated his constitutional right to partake of a diet in accordance with the dictates of the Common Fare religious diet.[5] Plaintiff claims that, on July 24, 2007, he was served a tray that had mackerel and cottage cheese on it, in violation of the Common Fare diet. He further contends that, on August 1, 2007, he was served a tray that had both fish and blueberry cake on it, and that the cake contains milk as an ingredient, thus violating his right to partake of his religious diet.[6]

### A. First Amendment

Although inmates clearly retain their First Amendment right to free exercise of religion in prison, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987), including the right "to receive diets consistent with their religious scruples," Kahane v. Carlson, 527 F.2d 492, 495 (2nd Cir. 1975), "only intentional conduct is actionable under the Free Exercise Clause," Lovelace v. Lee, 472 F.3d

---

[5] The Common Fare diet is designed to meet the needs of a wide variety of religious groups, including Jews and Muslims. See Madison v. Virginia, 474 F.3d 118, 123 (2006); Acoolla v. Angelone, et al., Civil Action No. 7:01-cv-01008, slip op. at 6 (W.D. Va. September 1, 2006). Plaintiff receives the diet because he is a member of the Nation of Islam ("NOI"). Plaintiff states that the VDOC's Food Service Manual provides that "[a] requirement of Common Fare/kosher is that dairy and meat/chicken/fish are not served in the same meal."

[6] Plaintiff presents an abundance of materials indicating his attempts to exhaust the administrative remedies procedures at ROSP, and his properly exhausted grievances and appeals, copies of which he has submitted and to which he cites as exhibits, disclose many relevant facts. As the court has already observed with regard to plaintiff's access to the courts claim, plaintiff can bring to this court only such claims as have been preserved by his proper exhaustion of all administrative remedies. Plaintiff presents several emergency grievance forms that were rejected as improper because the substance of the grievance did not constitute an emergency. Plaintiff's own extensive documentation indicates that these grievances were returned to him as deficient, and that he did not appeal the denial of any of those initial grievances or correct the deficiencies and resubmit the grievances within the allotted time. Additionally, plaintiff grieved to the highest level of appeal only his claims of July 24, 2007, and August 1, 2007. Plaintiff's thoroughgoing submissions indicate that he did not appeal to the highest level of appeal any grievance regarding the placement on his meal tray on August 2 and 7, 2007, of a piece of cake that contained dairy ingredients when the tray also contained mackerel. Because plaintiff did not utilize all steps of the grievance procedures when they were available to him, the court concludes that he failed to exhaust his administrative remedies as to those claims.

174, 201 (2006) (citing Daniels v. Williams, 474 U.S. 327, 329-31 (1986)). In Lovelace, the Court of Appeals approved the district court's extension of the analysis in Daniels to the inmate plaintiff's First Amendment free exercise claim, where the district court (Kiser, J.) reasoned that the operative word "prohibit" in the First Amendment connotes a "conscious act" rather than a merely negligent one, and held that negligent interference with free exercise rights is not actionable under § 1983. Lovelace, 472 F.3d at 201; see also Lewis v. Mitchell, 416 F. Supp.2d 935, 942-44 (S.D. Cal. 2005); Shaheed v. Winston, 885 F. Supp. 861, 868 (E.D. Va. 1995).

Only intentional conduct is actionable under the Free Exercise Clause, and plaintiff has not identified any particular defendant whose intentional conduct deprived him of his free exercise rights. Taken in the light most favorable to plaintiff, the facts he alleges and the documentary evidence he submits support, at most, a finding that defendants' actions resulted from negligence and not from intentional action.[7] Indeed, the isolated incidents plaintiff complains of indicate a lack of intent on the part of defendants.[8]

---

[7] The court notes that plaintiff's own allegations state that he has continued to participate in the Common Fare diet, and it is clear that he was not forced to eat any food that he felt did not comport with the dictates of his religious diet. Inmates have a constitutional right to receive a nutritious diet in keeping with their sincere religious beliefs. Ross v. Blackledge, 477 F.2d 616, 618-19 (4th Cir. 1973). An inmate must first demonstrate, however, that the requested diet is based in his sincere, religious belief, and – of particular significance here – that the diet choices already available to him substantially burden his religious practice. See Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450-51 (1988) (First Amendment "does not and cannot imply that incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs, require government to bring forward a compelling justification for its otherwise lawful actions"). Officials need not provide a special religious diet if the inmate can maintain an adequate diet by choosing items from the available menu that do not offend his sincere beliefs, Abernathy v. Cunningham, 393 F.2d 775, 778 (4th Cir. 1968). Moreover, "the inquiry under RLUIPA is more rigorous than under the First Amendment," Lovelace, 472 F.3d at 188 n. 3 (2006), and, as the court will explain in the next section, the facts indicate that the isolated incidents plaintiff complains of do not constitute a substantial burden on the exercise of plaintiff's RLUIPA rights, and therefore do not constitute a violation of his Free Exercise rights.

[8] Plaintiff presents properly exhausted claims regarding only two dates – July 24, 2007, and August 1,
(continued...)

Case 7:07-cv-00480-GEC-mfu   Document 5   Filed 11/05/07   Page 7 of 10   Pageid#: 46

For these reasons, the court will dismiss the instant First Amendment claim, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

## B. RLUIPA

Plaintiff's allegation that the two instances of serving him trays allegedly out of conformity with the Common Fare diet violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq., likewise fails, as plaintiff has not shown that these isolated incidents substantially burdened his exercise of religion. See Lovelace, 472 F.3d at 187. The Supreme Court has defined "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981); Lovelace, 472 F.3d at 187. Only when such a showing is made does the government bear the burden of persuasion that its practice is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. Lovelace, 472 F.3d at 187; Adkins v. Kaspar, 393 F.3d 559, 567 n. 32 (5th Cir. 2004), cert. denied, 545 U.S. 1104 (2005); Civil Liberties for Urban Believers v. Chicago, 342 F.3d 752, 760 (7th Cir. 2003), cert. denied, 541 U.S. 1096 (2004). Although "the inquiry under RLUIPA is more rigorous than under the First Amendment," Lovelace, 472 F.3d at 188 n. 3, plaintiff does not raise any allegations whatsoever in the instant complaint that the two isolated incidents at issue here prevented him from exercising his religious practices, such as praying, studying religious materials, fasting, or, indeed, partaking of a diet in conformity with the dictates of his religion. The most plaintiff alleges is that he is outraged by these isolated incidents. However, he does not allege that the diet choices

---

[8](...continued)
2007. See supra n. 6. Assuming arguendo that he had properly exhausted his administrative remedies as to the occurrences on August 2 and 7, 2007, he would still complain, at most, of occurrences on four dates.

8

remaining on his meal tray on those dates (were he to abstain from eating one of the offensive servings, the consumption of which would violate his religious convictions) substantially burdened his religious practice, Lyng, 485 U.S. at 450-51, or that he could not maintain an adequate diet on those dates by choosing from the remaining items, Abernathy, 393 F.2d at 778. The court finds, based on plaintiff's allegations and the documents he submits in support of those allegations, that plaintiff cannot show that the isolated incidents of which he complains have placed "substantial pressure" on him "to modify his behavior and to violate his beliefs" so as to constitute a substantial burden on his religious exercise.[9] Lovelace, 472 F.3d at 187.

Because plaintiff has not demonstrated that the isolated incidents of which he complains placed a substantial burden on his exercise of religion, the RLUIPA claim will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

---

[9] Regardless of the frequency of these occurrences, plaintiff's allegations fail to state a claim; he fails to show that he has been pressured to violate his religious beliefs because of one serving of cake containing milk as an ingredient on his otherwise acceptable tray. See Lyng, 485 U.S. at 450-51; Abernathy, 393 F.2d at 778; see also Acoolla v. Angelone, et al., Civil Action No. 7:01-cv-01008, slip op. at 18 n. 13 (W.D. Va. September 1, 2006) (rejecting bald allegation that VDOC's process of sanitizing food trays fails to remove all significant traces of food); Tuller v. Braxton, et al., Civil Action No. 7:02-cv-01297 (W.D. Va. September 17, 2004) (finding "unsupportable" plaintiff's claims that trays were "intermixed" and banging "Common Fare Diet . . . against the same garbage pail as trays for other meals [rendered] them unsuitable for holding kosher meals" when defendants maintained "that the trays are color-coded," "are not mixed," and "are stored, washed, and handled separately"; further, plaintiff's admission that he continued to eat meals from such trays indicated that he did "not really believe" that the trays rendered the Common Fare Diet meals "un-kosher"); Frazier v. Ferguson, Civil Action No. 04-5140, slip op., 2006 WL 2052421, at *4 (W.D. Ark. 2006) (finding no substantial burden under RLUIPA where Seventh-day Adventist inmate received vegetarian diet and had to discard some items that did not comport with his religious preference for vegan diet); Kretchmar v. Beard, Civil Action No. 05-6108, slip op., 2006 WL 20386887, at * 5 (E.D. Pa. 2006) (finding no RLUIPA or First Amendment violation where inmate received nutritionally adequate kosher diet, although it was repetitious and cold), aff'd, Third Cir. Case No. 06-4039, slip op., 2007 WL 2050878 (July 18, 2007) (also observing that appellant's objections to being served non-kosher food during Passover of 2005 had not been exhausted before the suit was filed and had been properly dismissed by the district court). The court makes no determinations in the instant case regarding the VDOC's Common Fare diet's suitability for kosher meals, but notes that cottage cheese is generally regarded as kosher, and that some processes convert unacceptable combinations of foods into acceptable combinations, and that it is sometimes acceptable to eat prohibited foods if one waits a prescribed period of time, or drinks a prescribed amount of water, or some combination of these processes, before consuming permitted foods. See http://en.wikipedia.org/wiki/Kosher; http://en.wikipedia.org/wiki/Halal; http://en.wikipedia.org/wiki/Muslim_dietary_laws.

Case 7:07-cv-00480-GEC-mfu Document 5 Filed 11/05/07 Page 9 of 10 Pageid#: 48

## III. Conclusion

Based on the foregoing, plaintiff's access to the courts claim will be dismissed, without prejudice, for failure to exhaust all available administrative remedies as required under 42 U.S.C. § 1997e(a), and plaintiff's religious diet claims will be dismissed, pursuant to 28 U.S.C. § 1915A, for failure to state a claim upon which relief may be granted.[10]

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 2d day of ~~October~~ November, 2007.

/s/ Jack Conrad
United States District Judge

---

[10] Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).